**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION (as successor-in-interest to U.S. Bank, National Association), as Trustee, on behalf of the Registered Holders of Citigroup Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-GC15, acting by and through its special servicer, LRN Partners, LLC,**

**Plaintiff,**

**v.** **3:24-CV-540 (FJS/ML)**

**CAYUGA PROFESSIONAL CENTER, LLC; A. FROST TRAVIS; MACK A. TRAVIS; and NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE,**

**Defendants.**

---

| **APPEARANCES** | **OF COUNSEL** |
| --- | --- |
| **VENABLE LLP**<br>151 West 42nd Street, 49th Floor<br>New York, New York 10036<br>Attorneys for Plaintiff | **HEATHER DEANS FOLEY, ESQ.**<br>**MICHAEL ANTHONY GUERRA, ESQ.**<br>**ADAM G. POSSIDENTE, ESQ.** |
| **CROSSMORE LAW FIRM**<br>115 West Green Street<br>Ithica, New York 14850<br>Attorneys for Defendants | **EDWARD Y. CROSSMORE, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER[1]

## I. INTRODUCTION

On April 18, 2024, Plaintiff U.S. Bank Trust Company, National Association (as Successor-in-Interest to U.S. Bank, National Association), as Trustee, on behalf of the Registered Holders of Citigroup Commercial Mortgage Securities Inc., Commercial Mortgage Pass-Through Certificates, Series 2013-GC15 ("Plaintiff") commenced this action against Defendants Cayuga Professional Center, LLC ("Borrower"), A. Frost Travis, Mack A. Travis ("Guarantors") (Borrower and Guarantors shall be referred to herein, collectively, as "Defendants"), and the New York State Department of Taxation and Finance ("NYSDTF"),[2] alleging defaults relating to a commercial mortgage loan. *See generally* Dkt. No. 1, Complaint. Subsequently, on April 27, 2023, Plaintiff filed an Amended Complaint. *See generally* Dkt. No. 26, Amended Complaint. Thereafter, on June 13, 2024, the Court appointed William C. Colucci as a receiver. *See* Dkt. No. 30. As required by his appointment order, Mr. Colluci has been submitting periodic income statement reports to the Court.

Presently before the Court is Plaintiff's motion for summary judgment and to appoint a special master or magistrate judge.[3] *See generally* Dkt. No. 52, Plaintiff's Memorandum of Law.

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which can be found in the upper right corner of those pages.

[2] NYSDTF was named as a Defendant in this action for the purpose of foreclosing liens, if any. *See* Dkt. No. 26, Amended Complaint, at ¶ 9. NYSDTF did not answer the Amended Complaint. Consequently, Plaintiff moved for a default judgment as to the First Cause of Action against NYSDTF, *see* Dkt. No. 51, which this Court granted, *see* Dkt. Nos. 61-62. Accordingly, NYSDTF is subject to entry of a judgment of foreclosure and sale in favor of Plaintiff with respect to the Property.

[3] Plaintiff moves for summary judgment on its first three causes of action in its Amended Complaint: (i) First Cause of Action: Foreclosure of the Mortgage; (ii) Second Cause of Action:

Guarantors partially oppose Plaintiff's motion.[4] *See generally* Dkt. No. 58, Guarantors' Memorandum of Law. Specifically, Guarantors oppose Plaintiff's motion only "to the extent it seeks a money judgment against them."[5] *See id.* at 4; *see also* Dkt. No. 57, Affidavit of Defendant A. Frost Travis, at ¶ 2 (stating that "your deponent and Mack A. Travis . . . object to the summary judgment motion to the extent that it requests a money judgment, immediately enforceable against [A. Frost Travis and Mack A. Travis, Guarantors,] for the full amount of the Mortgage Debt, together with an additional sum of $387,596.31 on top of the Mortgage Debt").

## II. RELEVANT FACTUAL BACKGROUND[6]

### A. The loan documents

On or about August 14, 2013, Borrower executed and delivered to The Bancorp Bank (the "Original Lender") a Consolidated, Amended and Restated Promissory Note, *see* Dkt. No. 54, Plaintiff's Statement of Material Facts ("SMF"), at ¶ 1, which obligated Borrower to pay the Original Lender, and its assigns or successors, the total principal sum of $4,150,000.00 ("Loan").

---

Judgment on the Guaranty against Mack A. Travis and A. Frost Travis for diverted rents; and (iii) Third Cause of Action: full recourse on the Guaranty against Mack A. Travis and A. Frost Travis. Plaintiff does not move for summary judgment on its Fourth Cause of Action, Equitable Accounting, against the Borrower. *See* Plaintiff's Memorandum of Law at 7 n.2 (acknowledging that "Plaintiff's Fourth Cause of Action, for an equitable accounting, is not addressed in the Motion"); *see also* Amended Complaint at ¶¶ 116-120 (equitable accounting COA).

[5] Guarantors assert that "any liability on the Guaranty should be determined after the sale of the Mortgaged Premises and application of the sale proceeds to the Mortgage Debt." *See* Dkt. No. 57, Affirmation of A. Frost Travis, at ¶ 8.

[6] Unless otherwise noted, the following facts are taken from Plaintiff's Statement of Material Facts ("SMF") and are undisputed.

The Loan was to be paid in accordance with the terms of a certain Loan Agreement dated August 14, 2013 ("Loan Agreement"). *See id*.

As evidence of indebtedness, Borrower executed and delivered to the Original Lender a Consolidated, Amended and Restated Mortgage, Assignment of Leases and Rents, and Security Agreement dated August 14, 2013 ("Mortgage"). *See id.* at ¶ 2. Also on August 14, 2013, to further secure its obligations under the Loan, Borrower executed and delivered to the Original Lender an Assignment of Leases and Rents ("ALR"), which granted the Original Lender a security interest in "Rents." S*ee id.* at ¶ 6.[7] The ALR was duly filed and recorded in the Recorder's Office for Tompkins County, New York, on August 28, 2013. *See id.* at ¶ 7.

Moreover, as an additional inducement for the Original Lender to make the Loan, on August 14, 2013, Guarantors entered into a Guaranty of Recourse Obligations Agreement, in favor of the Original Lender ("Guaranty"). *See id.* at ¶ 9.

The Mortgage granted a first-priority mortgage lien and security interest in all of Borrower's right, title, and interest in and to real property located at 1301 Trumansburg Road, Ithaca, New York 14859, together with as the premises, improvements, fixtures, machinery, equipment, personality, rents, revenues and other rights or interests of any kind or nature located thereon ("Property"). *See id.* The Mortgage was duly filed and recorded in the Recorder's Office of Tompkins County, New York, on August 28, 2013. *See id.* at ¶ 3.

The Property is managed by Ithaca Rental and Renovations, Inc. ("Manager"). *See id.* at ¶ 4. Manager is an affiliate of Borrower, *see id.* at ¶ 5, and both Borrower and Manager are owned and/or controlled by Defendant A. Frost Travis. *See id.* On August 14, 2013, the same day

[7] Additional obligations regarding the collection and control of rental income from the Property are contained in a Cash Management Agreement, which was entered into by Borrower on the same day as the ALR. *See id.* at ¶ 8.

that the Loan, Loan Agreement, Mortgage, ALR, and Cash Management Agreement were entered into, Defendant A. Frost Travis executed a Consent and Subordination of Manager Agreement, on behalf of Borrower and Manager ("Subordination Agreement"), which required that the fees that were to be paid to Manager be subordinate to the payment of the Loan. *See id.* at ¶ 5.

On September 25, 2013, all documents and instruments securing the Loan—including, but not limited to, the Loan Agreement, Mortgage, ALR, Cash Management Agreement, Subordination Agreement, and Guaranty (the "Loan Documents")—were assigned by the Original Lender to Plaintiff. *See id.* at ¶ 12.

**B. The alleged maturity default**

Per the terms of the Loan Documents, the maturity date on the Loan was September 5, 2023 (the "Maturity Date") and, upon the Maturity Date, the final payment of principal became due. *See* SMF at ¶ 20. Notwithstanding the final payment becoming due on the Maturity Date, Borrower failed to pay the outstanding principal due on the Loan, together with all accrued and unpaid interest, on or before the Maturity Date—the last payment Borrower made on the Loan was August 7, 2023. *See id.* at ¶¶ 24-25.

The Loan Documents provide that Borrower's failure to pay the outstanding balance prior to or on the Maturity Date constituted an event of default ("Maturity Default"); and, upon default, Plaintiff was entitled to exercise the remedy of foreclosure. *See id.* at ¶ 25. Consequently, on September 22, 2023, and January 17, 2024, Plaintiff notified Borrower that an event of default had occurred and demanded payment of all unpaid amounts due and owing. *See id.* at ¶ 27. Despite Plaintiff's demands, as of the date that Plaintiff filed its motion for summary judgment, Borrower had failed to pay the Loan in full as required by the Loan Documents. *See id.* at ¶ 28.

Plaintiff alleges that, as of January 5, 2025, the sum of the unpaid balance of Borrower's obligations under the Loan Documents is $4,219,069.71, which includes (1) the unpaid principal amount of $3,387,412.82; (2) interest at the non-default rate of 5.39% per annum from March 5, 2024, through January 5, 2025, in the amount of $155,194.32; (3) separate and additional default interest at the rate of 5.00% per annum from September 5, 2023, through January 5, 2025, in the amount of $235,857.98; (4) late fees in the amount of $173,074.28; (5) property protection advances totaling $142,580.13; (6) insurance advance in the amount of $24,336.34; (7) interest on advances in the amount of $5,555.99; (8) lease review fee in the amount of $500.00; (9) payoff processing fee in the amount of $700.00; (10) UCC filing fee in the amount of $133.72; (11) special servicer fees from October 5, 2023 through January 5, 2025 in the amount of $56,000.00; and (12) a liquidation fee in the amount of $37,724.13.[8] *See id.* at ¶ 29. Certain funds are being held in escrow, *see id.* at ¶ 33; and Plaintiff asserts that, to the extent the funds on deposit in any escrow are not utilized for the payment of Property-related expenses, they will be credited towards the balance of the Loan. *See id.* at ¶ 34.

Moreover, several costs due pursuant to the Loan Documents—such as attorneys' fees, due diligence costs, title charges, special servicing fees—continue to accrue,[9] *see id.* at ¶ 30, and the Loan Documents provide that Borrower is responsible for payment of all costs, fees and

[8] Defendants dispute part of this fact. Specifically, Defendants dispute the damages claimed at (5), (6), (7), (8), (9), (10), (11), and (12). Defendants also contend that item (4), the late fee in the amount of $173,074.24, is "an attempt to impose a penalty that has no relation to the actual damages by the Lender due to nonpayment, and hence, such charge is uncollectable." *See* Dkt. No. 59, Defendants' Response to Plaintiff's SMF, at ¶ 29.

[9] Interest accrues at the rate of 5.39% per annum, and default interest accrues at the additional default rate of 5.00% per annum, compounded monthly. *See* Plaintiff's SMF at ¶ 32.

expenses, including reasonable attorneys' fees, incurred by Plaintiff in connection with enforcing the Loan Documents. *See id.* at ¶ 30.

**C. Borrower's alleged failure to turnover rents and its diversion of rents**

Pursuant to the terms of the Cash Management Agreement, Borrower was required to "establish an account (the 'Restricted Account') in the name of Borrower for the benefit of [Plaintiff] into which Borrower shall deposit, or cause to be deposited, all Rents and other revenue from the Property." *See id.* at ¶ 35. Additionally, the Loan Agreement provides that "all Rents received by Borrower or Manager shall be deposited into the [Restricted Account] within one (1) Business Day of receipt," *see id.* at ¶ 36, and that a "Cash Trap Period" will commence if an event of default occurs and is not cured. *See id.* at ¶ 37. During a Cash Trap Peirod, funds are required to be transferred, each business day, from the Restricted Account to an account held by Plaintiff. *See id*. at ¶ 38.

Despite these requirements, since 2022, Borrower has not deposited rents or other revenues from the Property into the Restricted Account. *See id.* at ¶ 39. As a result, Plaintiff has been deprived of the ability to "implement the agreed upon cash sweep protections after the occurrence of the Maturity Default." *See id.*

Moreover, pursuant to the Subordination Agreement, Borrower and Manager agreed that the fees payable to Manager under the Management Agreement were to be subordinate to the lien and payment of "(i) the Mortgage, (ii) the Loan Documents, and (iii) any and all modifications, amendments, renewals and/or substitutions of the Mortgage and/or any of the other Loan Documents." *See id.* at ¶ 43. By letter dated March 20, 2024, Plaintiff made written demand to Borrower and Manager to turn over all management fees and commission paid to, received by, or

earned by Manager after the Maturity Default. *See id.* at ¶ 44. Notwithstanding Plaintiff's demand, as of the date of Plaintiff's motion for summary judgment, no management fees had been disgorged or turned over to Plaintiff, and income statements and financial reporting reveal that Borrower made several payments under the expense heading "MANAGEMENT" after the Maturity Default. *See id.* at ¶¶ 45-46.

Additionally, Borrower admits that, after the Maturity Default, Borrower used rent and revenues from the Property to make "intercompany loans" for the purpose of funding and operating shortfalls at other properties that were owned by entities affiliated with Borrower and Guarantors. *See id.* at ¶ 47. Borrower's balance sheet indicates that, as of May 10, 2024, Borrower had over $280,000 in receivables that were attributable to intercompany loans to eleven affiliates. *See id.* at ¶ 49. Moreover, Borrower's ledger shows that more than $367,000.00 of intercompany loans were made after the Maturity Default, and as of November 2024 outstanding intercompany loans totaled $363,013.78. *See id.* at ¶¶ 50, 60. None of these intercompany loans were reduced to writing. *See id.* at ¶ 48.

**D. Liability of Guarantors under the Guaranty**

Pursuant to the Guaranty, Guarantors unconditionally and irrevocably guaranteed, in their personal capacity, full and prompt payment of the "Guaranteed Obligations" when they become due. *See* Plaintiff's SMF at ¶ 51. The Guaranty defines the "Guaranteed Obligations" to include (i) Borrower's Recourse Liabilities, and (ii) from and after the date that any Springing Recourse Event occurs, payment of all the Debt as and when the same is due in accordance with the Loan Documents. *See id.* at ¶ 52. Plaintiff contends that, per the terms of the Loan Agreement, the $24,582.53 in management fees paid after the maturity default and the $363,013.78 in

intercompany loans made after the Maturity Date constitute Borrower's Recourse Liabilities and therefore result in liability for Guarantors.[10] *See id.* at ¶ 54.

Defendants admit that, as of the date of Plaintiff's motion for summary judgment, despite written demand by Plaintiff to pay the debt due in full as well as Plaintiff's costs and fees incurred in enforcing its rights under the Loan Documents, "Guarantors had failed and refused to satisfy their full recourse obligations to the [Plaintiff] with respect to the payment of the Guaranteed Obligations due under the Guaranty and they remain in default thereunder." *See id.* at ¶ 66.

Moreover, pursuant to the terms of the Guaranty, if Guarantors fail to pay all or any sums due upon demand, the amount of such sums payable by Guarantor to Lender shall bear interest from the date of demand until paid at the Default Rate. *See id.* at ¶ 61.

Under the Guaranty, Guarantors are also liable for (i) reasonable, out-of-pocket costs and expenses incurred in enforcing Plaintiff's rights and remedies relative to the rents and revenues from the Property, *see id.* at ¶ 62, and (ii) all costs, charges and expenses, including attorneys' fees and disbursements that may be incurred by Plaintiff in enforcing the obligations and liabilities of Guarantors. *See id.* at ¶ 63. In sum, Guarantors agreed to be liable to Plaintiff for all costs, fees, and expenses Plaintiff incurred in initiating and pursuing this litigation. *See id.* at ¶ 64.

---

[10] Defendants "deny this, because . . . Recourse Liability arises only to the extent of any loss, damage, cost, expense, liability, claim or other obligations incurred by [Plaintiff]." *See* Dkt. No. 59, Defendants' Response to Plaintiff's SMF, at ¶ 54.

## III. DISCUSSION

### A. Standard of review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir. 2003) (citation omitted). Still, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted), and cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9, 12 (2d Cir. 1986) (citing [*Quarles v. Gen. Motors Corp*., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)]).

### B. Whether Plaintiff is entitled to foreclosure

Plaintiff seeks summary judgment of foreclosure and requests that the Court issue an order of sale for the Property. *See* Dkt. No. 52, Plaintiff's Memorandum of Law, at 8-14.

Under New York Law,[11] to establish its *prima facie* case in a mortgage foreclosure proceeding, the plaintiff must "'produ[ce] evidence of the mortgage, the unpaid note, and the

[11] New York Law governs the Loan Documents. *See* Plaintiff's SMF at ¶ 11.

defendant's default.'" *Wilmington Tr., Nat'l Ass'n as Tr. for Registered Holders of Credit Suisse First Bos. Mortg. Sec. Corp. v. Lott Ave. Owner, LLC*, No. 22-cv-2437 (FB) (CLK), 2024 WL 1973363, at *2 (E.D.N.Y. May 3, 2024) (quoting *Gustavia Home, LLC v. Rutty*, 720 F. App'x 27, 28 (2d Cir. 2017)); *see also Vill. Bank v. Wild Oaks Holding, Inc*., 196 A.D.2d 812, 812 (1993) (noting that "[i]t is settled that in moving for summary judgment in an action to foreclose a mortgage, a plaintiff establishes its case as a matter of law through the production of the mortgage, the unpaid note, and evidence of default" (citation omitted)).

Once the plaintiff establishes its *prima facie* case, "'[t]he burden then shifts to the defendant to demonstrate the existence of a triable issue of fact as to a bona fide defense to the action[.]'" *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 336 (2d Cir. 2021) (summary order) (quoting *Capstone Bus. Credit, LLC v. Imperia Family Realty, LLC*, 70 A.D.3d 882, 895 N.Y.S.2d 199, 201 (2010) (internal quotation marks omitted)).

Preliminarily, the Court notes that Defendants do not dispute that Plaintiff is entitled to summary judgment on its foreclosure action, nor do they raise a bona fide defense as to the foreclosure claims. *See* Dkt. No. 58, Guarantors' Memorandum of Law, at 4 (Guarantors noting that they **partially** oppose Plaintiff's motion for summary judgment, and in opposition Guarantors merely "request the [P]laintiff's summary judgment motion be denied to the extent it seeks a money judgment against them"); *see also* Dkt. No. 57, Defendant A. Frost Travis' Affidavit in Partial Opposition to Plaintiff's Motion for Summary Judgment, at 3 (stating that Guarantors "request [P]laintiff's summary judgment motion be denied to the extent it seeks a money judgment against them").

Next, even if Defendants opposed Plaintiff's request for summary judgment on its foreclosure action, Plaintiff nevertheless has satisfied its *prima facie* burden of entitlement to

summary judgment. First, Plaintiff provided the Court with executed copies of the Loan Documents, which (i) were assigned to Plaintiff,[12] (ii) describe the terms of Borrower's repayment obligations under the Loan, and (iii) provide that Borrower's obligations are secured by, among other things, the Property. *See e.g.*, Dkt No. 52-8, Loan Agreement; Dkt. No. 52-9, Note; Dkt. No. 52-10, Mortgage; Dkt. No. 52-11, ALR; Dkt. No. 52-12, Cash Management Agreement; *see also* Plaintiff's SMF at ¶¶ 2-10. Second, Plaintiff has established that Borrower defaulted on its obligations under the Mortgage by failing to pay Plaintiff all amounts due on the Loan on or before the Maturity Date. *See* Plaintiff's SMF at ¶¶ 25-28.[13]

Accordingly, the Court grants Plaintiff's motion for summary judgment on its First Cause of Action requesting foreclosure and sale of the Property. *See E. Sav. Bank, FSB v. Rabito*, No. 11-cv-2501 KAM, 2012 WL 3544755, at *7 (E.D.N.Y. Aug. 16, 2012) (granting the plaintiff's motion for summary judgment and ordering foreclosure and sale of property because the defendant had "not raised any genuine issue of material fact or legal defense to defend against plaintiff's motion for summary judgment"); *see also U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966 (VEC), 2025 WL 1019112, at *3 (S.D.N.Y. Apr. 4, 2025) (granting motion for summary judgment where plaintiff established prima facie case and defendants did not oppose the summary judgment motion or present any evidence to overcome plaintiff's prima facie case).

[12] Defendants do not dispute that the Loan Documents were assigned to Plaintiff. *See* Defendants' Response to Plaintiff's SMF at ¶ 12.

[13] Defendants admit that they defaulted under the Loan Documents by failing to pay the outstanding balance of the principal sum of the Loan on or before the Maturity Date and that such failure entitles Plaintiff to the remedy of foreclosure. *See* Defendants' Response to Plaintiff's SMF at ¶¶ 25-28.

**C. Appointment of a referee to calculate the amount due under the Loan Documents and to effectuate the sale of the Property**[14]

Plaintiff requests that the Court appoint a "Special Master" or "Magistrate Judge" to "compute the amount due under the Loan Documents, as well as Plaintiff's fees, costs, and expenses." *See* Plaintiff's Memorandum of Law at 25. Defendants do not oppose Plaintiff's request. *See generally* Guarantors' Memorandum of Law.

Because the Court has granted summary judgment to Plaintiff based on an undisputed showing of default on the Mortgage, *see supra*, the Court may appoint a referee to "effectuate the foreclosure and sale of the property at public auction," *U.S. Bank Nat'l Ass'n, as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp. Multifamily Mortg. Pass-Through Certificates, Series 2019-SB58 v. Mazel on Del LLC*, No. 22-CV-00602-LJV-LGF, 2025 WL 4745454, at *14 (W.D.N.Y. Dec. 5, 2025), *report and recommendation adopted,* No. 22-CV-602-LJV-LGF, 2026 WL 1494793 (W.D.N.Y. Feb. 4, 2026), and "to ascertain and compute the amount due to plaintiff under the [Loan]," *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384 (CS), 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016) (noting that, pursuant to Section 1321

[14] Although Plaintiff requests the appointment of a "Special Master" or "Magistrate Judge," *see* Plaintiff's Memorandum of Law at 25, the Court, throughout this Memorandum-Decision and Order, will use the term "referee" in lieu of "Special Master" or "Magistrate Judge," as the term "referee" is often used in the real property context. *See e.g., CIT Bank, N.A. v. Coombes*, No. 17-CV-5871 (ADS) (SIL), 2019 WL 2516729, at *8 (E.D.N.Y. May 23, 2019) (noting that "courts routinely appoint **referees** to effectuate the sale of foreclosed properties") (citations omitted) (emphasis added), *report and recommendation adopted by* 2019 WL 2515367 (E.D.N.Y. June 18, 2019; *Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG) (RML), 2020 WL 1242828, at *6 (E.D.N.Y. Mar. 16, 2020) (*adopting recommendation* that the "court appoint a **referee** to manage the foreclosure and sale") (emphasis added); *U.S. Bank Tr., N.A. v. Tabasco*, No. 1:15-cv-410 (GLS/DJS), 2018 WL 6505534, at *4 (N.D.N.Y. Dec. 11, 2018) (summary order) (granting motion for summary judgment of foreclosure and granting request to appoint a "**referee** pursuant to RPAPL § 1321 and Fed. R. Civ. P. 53") (emphasis added).

of the New York Real Property Actions and Proceedings Law, after a court has granted summary judgment in favor of a plaintiff based on an undisputed showing of default on a mortgage, the "trial court has the authority to compute the amount owed or appoint a referee to do the same").

Moreover, because Plaintiff is entitled to attorneys' fees and disbursements pursuant to the terms of the Loan Documents, *see infra,* the referee shall include Plaintiff's attorneys' fees and costs in that computation. *See CIT Bank, N.A. v. Ekpo*, No. 17-cv-00787 (DLI) (RML), 2019 WL 4861144, at *4 (E.D.N.Y. Sept. 30, 2019) (ordering referee to calculate attorneys' fees and costs); *see also Lott Ave. Owner, LLC*, 2024 WL 1973363, at *4 (granting summary judgment to the lender based on "an undisputed showing of default on the mortgage" and appointing a referee to ascertain the amount owed under the note and mortgage, as well as the attorneys' fees and costs owed to lender).

Accordingly, the Court grants Plaintiff's request for the appointment of a referee to effectuate the sale of the Property and to calculate the amounts Defendants owe to Plaintiff under the Loan Documents.

**E. Guarantors' liability**

Next, Plaintiff seeks summary judgment against Guarantors in two respects: (i) for the entire amount of debt owed under the Loan Documents (Plaintiff's Third Cause of Action), *see* Plaintiff's Memorandum of Law at 18-24, and (ii) for Guarantors' recourse liability with respect to Borrower's diversion and misappropriation of rents and revenue (Plaintiff's Second Cause of Action), *see id.* at 14-18. The Court will address each of these requests in turn.

### *1. Liability against Guarantors for full indebtedness – Plaintiff's Third Cause of Action*

Plaintiff asserts that Guarantors are liable for the full amount of the debt due under the Loan Documents. *See* Plaintiff's Memorandum of Law at 18-23. Specifically, Plaintiff argues that, because Borrower made intercompany loans when the Loan had a balance, a "springing recourse event" occurred, which triggered full recourse liability for Guarantors. *See id.*

In opposition, Guarantors do not argue or otherwise assert that they are not liable for the full indebtedness; instead, they contend that "[P]laintiff on its motion seeks . . . a money judgment enforceable presently against the Guarantors for the full amount of the mortgage debt" and that under the "one action rule" provided in Article 13 of New York State Real Property Action Law, Plaintiff is not permitted to seek a presently enforceable money judgment against them. *See* Guarantors' Memorandum of Law at 1-4. Guarantors argue that, instead, Plaintiff must proceed with foreclosure and sale of the Property and then seek a deficiency judgment, if any deficiency exists. *See id.*

#### i. Whether Plaintiff can obtain a presently enforceable judgment against Guarantors for the full indebtedness

The "one action rule" set forth in § 1301 of New York Real Property Action Law "forces a mortgagee into an election of remedies between, on the one hand, an action in equity for foreclosure, in which a deficiency judgment may then also be sought, or, on the other hand, an action at law on the debt." *Fed. Deposit Ins. Corp. v. Home Sav. Bank*, No. CV 90-2037 (RR), 1993 WL 41818, at *4 (E.D.N.Y. Feb. 9. 1993) (citations omitted). The purpose of the rule "is to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the

mortgage debt to one court and one action[.]" *Dollar Dry Dock Bank v. Piping Rock Builders, Inc*., 181 A.D.2d 709, 710 (2d Dep't 1992) (citation omitted). Here, because there is only one action pending, which includes both foreclosure and breach of guaranty causes of action, New York State Real Property Action Law § 1301 is inapplicable.

Additionally, in its reply memorandum, Plaintiff asserts that it never suggested that the Court should enter a presently enforceable money judgment against Guarantors, and that, contrary to Guarantors' contentions, Plaintiff "acknowledges that it will need to conclude the foreclosure sale and establish a deficiency . . . before it can pursue collection against Defendants." *See* Plaintiff's Reply Memorandum of Law at 4-5. Thus, the parties agree that, prior to collection efforts against Guarantors for the debt due under the Loan Documents, the Property must be sold, and a deficiency judgment must be obtained, if a deficiency exists.[15]

In light of the parties' agreement on the proper procedure to follow, the Court denies, as moot, any potential request for a "presently enforceable judgment" against Guarantors for the debt due under the Loan Documents.

### ii. Whether Guarantors are liable for the full amount of indebtedness

Next, the Court addresses whether Plaintiff is entitled to summary judgment on its Third Cause of Action, in which Plaintiff requests that the Court find Guarantors liable for the entire indebtedness.

[15] The Court agrees that pursuing a foreclosure sale and subsequently obtaining a deficiency judgment against Guarantors, if a deficiency exists, is the proper procedure to follow. *See e.g.*, *358 & 360 Atl. Ave. Holdings, LLC v. 358 Atl. Realty LLC*, No. 21-CV-168 (DG) (PK), 2023 WL 2969297, at *6 (E.D.N.Y. Mar. 1, 2023) (noting that, "by naming [the guarantor] in [the foreclosure] action, Plaintiff has preserved its right to seek a deficiency judgment against [the guarantor] **after** the foreclosure sale") (emphasis added) (citation omitted).

Preliminarily, the Court notes that it may, at the summary judgment stage, adjudicate whether Guarantors are liable for the entirety of the debt owed under the Loan Documents. *See e.g., Wells Fargo Bank, Nat'l Ass'n v. 840 Westchester Ave. NMA, LLC*, 786 F. Supp. 3d 586, 598 (S.D.N.Y. 2025); *see also Bankers Tr. Co. v. Battaglia*, No. 97-CV-0847E (SC), 1999 WL 782304, at *4 (W.D.N.Y. Aug. 23, 1999); *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-cv-03570 (KAM) (JAM), 2025 WL 556036, at *7 (E.D.N.Y. Feb. 20, 2025) (noting that "deficiency liability is properly adjudicated prior to entry of a judgment of foreclosure and sale").

Here, there is no dispute that Guarantors are personally liable for the entire debt owed under the Loan Documents to Plaintiff. Guarantors do not dispute the following facts: (1) pursuant to the terms of the Guaranty, Guarantors unconditionally and irrevocably guaranteed, in their personal capacity, the "full, prompt and complete payment when due of the Guaranteed Obligations," *see* Defendants' Response to Plaintiff's SMF at ¶ 51; (2) that the term "Guaranteed Obligations" includes, among other things, paying all debt due under the Loan Documents after a "springing recourse event" occurs, *see id.* at ¶ 52; (3) that pursuant to Section 3.1 of the Loan Agreement, the term "springing recourse event" includes "a breach in the covenants set forth in Section 6.13 of the Loan Agreement," *see id.* at ¶ 55; (4) that one of the covenants provided in Section 6.13 of the Loan Agreement is that, until the Loan is repaid in full, Borrower shall, at all times, remain a "Special Purpose Bankruptcy Remote Entity," *see id.* at ¶ 56; (5) that, to remain a "Special Purpose Bankruptcy Remote Entity," Borrower was prohibited from, among other things, making loans to any "Person"[16] . . ., *see id.* at ¶ 57; and (6)

[16] The Loan Agreement defines "Person" to mean "any individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any other person or entity, and any federal, state, county or municipal government or any bureau, department or agency thereof and any fiduciary acting in such capacity on behalf of any of the forgoing." *See* Plaintiff's SMF at ¶ 58.

that Plaintiff used rents and revenues from the property to make intercompany loans to at least eleven of Borrower's affiliates, *see id.* at ¶¶ 47, 49.

Thus, because Borrower does not dispute that it breached a covenant contained in Section 6.13 of the Loan Agreement, *i.e.,* Borrower failed to maintain its status as a Special Purpose Bankruptcy Remote Entity because it made improper intercompany loans to its affiliates when it still had outstanding debt under the Loan, a springing recourse event occurred, and Guarantors' liability for the entire debt due under the Loan Documents was triggered.

Accordingly, the Court grants Plaintiff's motion for summary judgment as to its Third Cause of Action, requesting Guarantors be held liable for the full amount of indebtedness. Guarantors are jointly and severally liable with Borrower for the full indebtedness. *See 840 Westchester Ave. NMA, LLC*, 786 F. Supp. 3d at 598 (granting the plaintiff summary judgment on foreclosure action and simultaneously granting the plaintiff summary judgment on its claims against the guarantors "for their personal and recourse liability for the payment of the outstanding principal of the Loan, all interest accrued and unpaid, and all other sums due to [p]laintiff"); *see also U.S. Bank Nat'l Ass'n v. NNN 200 Galleria, LLC*, 13 Civ. 414 (AKH), 2014 WL 11380950, *6 (S.D.N.Y. July 21, 2014) (granting summary judgment in favor of lender and against the guarantors because the lender established transfer in violation of term of loan agreement, triggering full recourse liability); *Fed Nat'l Mortg. Ass'n v. 800 E. 160th St., LLC*, No. 1:25-cv-2152 (ALC), 2026 WL 2655471, at *5 (S.D.N.Y. Sept. 9, 2026) (holding that "Borrower and Guarantor are personally liable, jointly and severally, for the full indebtedness, including any outstanding balance due under the Loan Documents following the sale of the Mortgaged Property").

***2. Liability for diverted rents—Plaintiff's Second Cause of Action***

Plaintiff requests that the Court grant its motion for summary judgment on its Second Cause of Action, which alleges that Guarantors failed to satisfy their recourse obligations with respect to the rents and revenues that Borrower wrongfully diverted after the Maturity Default. *See* Plaintiff's Memorandum of Law at 14-18. As relief, Plaintiff requests that the Court enter judgment in its favor in the amount of $387,596.31, the total amount of diverted rents/revenues after the Maturity Default, plus interest. *See id.* at 26.

**i. The terms of the Guaranty**

As noted above, pursuant to the terms of the Guaranty, Guarantors unconditionally and irrevocably guaranteed, in their personal capacity, the full, prompt, and complete payment when due of the "Guaranteed Obligations." *See* Plaintiff's SMF at ¶ 51. "Guaranteed Obligations" includes "Borrower's Recourse Liabilities," *see id.* at ¶ 52, which is defined by the Loan Agreement to encompass the following: (i) Rents received or collected after an Event of Default and not applied to the amounts due under the Loan and (ii) misappropriation or conversion of any rents or revenues (including failure to turn over rents and revenues to Plaintiff on demand following a Default). *See* Loan Agreement at § 3.1; *see also* Plaintiff's SMF at ¶ 53.

**ii. The parties' positions concerning diverted rent**

In support of Plaintiff's argument that it is entitled to a presently enforceable judgment against Guarantors for the diverted rents, Plaintiff asserts that Guarantors' recourse liability was

triggered by virtue of (i) Borrower making intercompany loans after the Maturity Default in violation of the Loan Agreement, *see* Plaintiff's Memorandum of Law at 16;[17]
(ii) Borrower misappropriating or converting "rents and revenues from the Property, that were otherwise pledged to the Lender as additional collateral for the Loan," when it made the intercompany loans, *see id.* at 17; and (iii) Borrower improperly paying the Manager management fees after the Maturity Default, when such payments were to be subordinate to amounts due under the Loan Documents,[18] *see id.* at 16.

In light of the above, Plaintiff argues that it is entitled to a presently enforceable judgment against Guarantors for the sum of the rents/revenues used in contravention of the terms of the Loan Documents—the $363,013.78 in intercompany loans made after the Maturity Default and the $24,582.53 in management fees paid after the Maturity Default.

In opposition, Guarantors acknowledge that the Guaranty makes them liable for recourse liabilities to the extent Borrower has allowed rents to be used after default for purposes other than payment of the mortgage debt. *See* Defendants' Memorandum of Law at 3. Moreover, Guarantors admit that, since August 2023, shortly before the September 5, 2023 Maturity Default, Borrower has not turned over rents or revenues from the Property nor made required deposits into the cash management account, *see* Defendants' Response to Plaintiff's SMF at ¶¶ 39, 41, and that after the Maturity Default, Borrower used rents and revenues from the property to make intercompany loans, *see id.* at ¶ 47.

---

[17] More than $367,000.00 of intercompany loans were made after the Maturity Default. *See* Plaintiff's SMF at ¶ 50. Some have been repaid; however, as of November 2024, the outstanding intercompany loans totaled $363,013.78. *See id.*

[18] Borrower paid $24,582.53 of management fees to Manager after the Maturity Default. *See* Plaintiff's Memorandum of Law at 16; *see also* Plaintiff's SMF at ¶¶ 4-5; 43-46.

However, Guarantors argue that the rents do not belong to Plaintiff—rather they are "collateral security for the repayment of the mortgage debt," and Plaintiff cannot recover "these additional amounts unless and until it may be determined that the [P]laintiff was harmed by this alleged diversion of collateral security." *See* Guarantors' Memorandum of Law at 3.

Guarantors contend that "the extent [of damages], if any, the [P]laintiff has suffered . . . by dint of the diversion of rents cannot be determined until after the sale of the mortgaged premises." *See id.* at 4. Guarantors therefore request that the Court delay determining the Guarantors' liability for the diverted rents until "the sale of the mortgaged premises and [] a deficiency judgment proceeding . . . is prosecuted." *See id.*

In reply, Plaintiff argues that it is not required to wait for "deficiency determination after the foreclosure sale in order to obtain judgment on its breach of contract claim," *see* Dkt. No. 60, Plaintiff's Reply Memorandum of Law, at 6, and that the ALR "makes clear, at the time the Loan was made, the Borrower made an absolute assignment to the Lender of the rents." *See id.* at 5.

Plaintiff then cites Section 5(a) of the Guaranty in support of its proposition that it is not required to wait until foreclosure before obtaining a judgment against Guarantors for the amounts of diverted rents/revenues, which provides that

> Lender may enforce the obligations of Guarantor under this Guaranty by a proceeding at law, in equity or otherwise, independent of any loan foreclosure or similar proceeding or any deficiency action against Borrower or any other Person at any time, either before or after an action against the Property or any part thereof, Borrower or any other Person. This Guaranty is a guaranty of payment and performance and not merely a guaranty of collection.

*See id.* at 6.

Plaintiff then asserts that courts "have held that causes of action seeking to recover rents are independent of an obligation to repay a note secured by a mortgage," *see* Plaintiff's Reply

Memorandum at 6, and that, here, "Guarantors have a separate and distinct obligation under the Guaranty and the Loan Agreement, arising from the Borrower's diversion and misappropriation of the rents and revenue from the Property," *see id.* at 7.

**iii. Whether Plaintiff is entitled to a presently enforceable judgment for the amounts of diverted rent/revenue**

Preliminarily, the Court notes that it is undisputed that Guarantors' recourse obligations were triggered as a result of Borrower diverting rent and revenue after the Maturity Default and that, as of the date of Plaintiff's motion for summary judgment, "Guarantors have failed and refused to satisfy their full recourse obligations to the Lender with respect to the payment of the Guaranteed Obligations due under the Guaranty, and they remain in default thereunder." *See* Defendants' Response to Plaintiff's SMF at ¶ 66.

Next, the Court acknowledges that the Guaranty provides that Plaintiff may enforce its obligations on the Guaranty independent of foreclosure; however, the Court also recognizes that Plaintiff elected to initiate a foreclosure proceeding and requested that the Court find Guarantors liable for the entire debt owed under the Loan Documents—which the Court indeed found, *see supra*—thus, upon sale of the Property, and obtaining a deficiency judgment, if a deficiency exists, Plaintiff will be fully compensated for any losses resulting from Borrower's diversion of rents/revenues.

"The interpretation of a guaranty is governed by the same principles that govern the interpretation of other forms of contract." *In re S. Side House, LLC*, 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) (citation omitted). "'A guaranty is a contract, and in interpreting it we look first to the words the parties used.'" *G3-Purves St., LLC v. Thomson Purves, LLC*, 101 A.D.3d 37, 40 (2d Dep't 2012) (quoting *Louis Dreyfus Energy Corp. v. MG Ref. & Mktg., Inc.*, 2 N.Y.3d 495,

500 (2004)). However, it is also well established that a guaranty must be read in the context of the other loan documents. *See id.* When interpreting the terms of a guaranty, the "'court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized.'" *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 531 (S.D.N.Y. 2020), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) (citation omitted).

Here, Plaintiff alleges that Guarantors' obligations to pay it the rents/revenues that were diverted after the Maturity Default are independent of their Mortgage obligations. *See generally* Plaintiff's Reply Memorandum of Law. The Court disagrees.

Reading the Loan Documents in conjunction with the Guaranty, the Court finds that, because the Loan Documents provide that the assigned rent was made as security for the repayment of the debt due under the Loan, the diverted rents/revenues Plaintiff seeks to independently recover on its Second Cause of Action form part of the same debt due under the Mortgage. *See e.g.*, Dkt. No. 52-11, Assignment of Rents and Leases Agreement, at 3-4 (noting that the assignment "is being given as additional security for the Loan" and that the assignment of rents was made as "part of the consideration for the Debt"); *see id.* at 5 (setting forth that, in the event of default, the assignee may "demand, sue for or otherwise collect and receive all Rents, including those past-due and unpaid, for application to the payment of the Debt in accordance with the terms of the Loan Documents"); *see* Dkt. No. 52-10 at 5-6 (defining "Mortgaged Property" to include, *inter alia*, leases and rents); *see id.* at 7-8 (noting that, upon an event of default, the mortgagor's license to collect rents is revoked, and that any rents collected "after the revocation of such license may be applied toward payment of the Debt . . ."); *see* Dkt. No. 52-12, Cash Management Agreement, at 4 (noting that, "pursuant to the Loan Documents,

Borrower has granted to Lender a security interest in all of Borrower's right, title and interest in, to and under the Rents"); *see id.* at 9 (noting that rents from the property "shall be deemed to be Collateral")*; see id.* at 13 (setting forth that "Lender may apply funds in the Cash Management Account to any Obligations[19] in such order of priority as Lender may determine in its sole discretion"); *see* Dkt No. 52-8, Loan Agreement, at 31 (noting that Borrower "pledges and assigns to Lender, and grants to Lender a security interest in, all Borrower's right, title and interest in and to all Rents").

Additionally, Plaintiff acknowledges in its motion papers that rents were to be applied to reduce Borrower's indebtedness. *See* Plaintiff's Reply Memorandum of Law at 7 (stating that rents "should have otherwise been turned over to the Receiver to support the operations at the Property or paid to the Lender to reduce the Borrower's indebtedness").

Accordingly, the Court rejects Plaintiff's assertion that Guarantors' obligation to pay diverted rents is separate from Guarantors' obligations under the Mortgage.[20] *See e.g.*, *Shaw*

[19] The Cash Management Agreement defines "Obligations" to include "all obligations of Borrower now or hereafter existing with respect to the Loan, whether for principal, interest, fees, expenses or otherwise, and all obligations of Borrower now or hereafter existing under the Note, the Mortgage, this Agreement and all other Loan Documents." *See* Cash Management Agreement at 12.

[20] The Court also rejects Plaintiff's argument that the "ALR makes clear, at the time the Loan was made, the Borrower made an absolute assignment to the Lender of the rents and revenue generated by the Property." *See* Plaintiff's Reply Memorandum of Law at 5. Contrary to Plaintiff's argument, the ALR's statement that the assignment of rents is "absolute" is not indicative of the rights actually transferred *See e.g., LT Propco, LLC v. Carousel Ctr. Co., L.P.*, 68 A.D.3d 1695, 1696 (4th Dep't 2009) (noting that, "[b]ecause New York operates under a lien theory as opposed to a title theory with respect to mortgages, 'the language used in the assignment instrument itself is not determinative of what rights are actually transferred'" and holding that "upon reviewing the assignment agreement . . . as a whole, . . .it is clear therefrom that the assignment of any rights to the mortgagees was for the purpose of securing the repayment of debt owed" (citation omitted)); *see also Wilmington Trust, N.A. v Skyline*, *3694 LLC*, NY Slip Op 31146(U) (2026) (noting that "[a]n assignment of rents clause in the mortgage, even one termed as "absolute," is not an actual conveyance of the rents, but a form of mortgage

*Funding, L.P. v. Grauer*, 98 A.D.3d 660, 660 (2d Dep't 2012) (rejecting the plaintiff's argument that "certain rent monies which they sought to recover in this action were wrongfully diverted to the [] defendants, and that those monies were owed to the plaintiffs independently of a mortgage debt" because "the terms of the subject Assignment of Rents and Leases establish that the rents, if recovered, were to have been 'applied in reduction of the entire indebtedness'"); *see also U.S. Bank Nat'l Ass'n as Tr. of Registered Holders of GS Mortg. Sec. Corp. II, Com. Mortg. Pass Through Certificates, Series 2012-GCJ9 v. Mattone*, 769 F. Supp. 3d 298, 319 (S.D.N.Y. 2025) (noting that courts in New York, "routinely bar suits at law on guaranties – while a parallel foreclosure action is pending or after the lender obtained a foreclosure judgment – precisely because the personal guaranty represent[s] part of a debt secured by the mortgage which was the subject of the foreclosure action") (cleaned up)).

Moreover, Plaintiff has not alleged damages as a result of Borrower's diversion of rents. The only conceivable injury Plaintiff has claimed is the loss of the rents/revenues that would have been deposited into a restricted account, which would then be transferred to Plaintiff's cash management account, *see* Plaintiff's SMF at ¶¶ 35-38, and then be applied, in Plaintiff's discretion, to "all obligations of Borrower . . .  existing with respect to the Loan." *See* Cash Management Agreement at 12-13. Because, pursuant to the terms of the Loan Documents, the diverted rents were to be to be applied to the obligations of Borrower, *i.e.*, they would be applied to reduce the overall debt Borrower owes Plaintiff; and, as discussed above, the Court determined that Borrower and Guarantors are jointly and severally liable for the entire debt due

---

by a pledge of property as security for the mortgage debt"); *In re S. Side House, LLC*, 474 B.R. 391, 402-03 (Bankr. E.D.N.Y. 2012) (stating that "New York courts interpret rent assignment clauses to be additional security even when they contain terms such as 'absolute' and 'unconditional'") (citing *Soho 25 Realty, LLC v. Bank of Am. (In re Soho 25 Realty, LLC)*, 2011 Bankr. LEXIS 1257, 2011 WL 1333084, at *6 (Bankr. S.D.N.Y. Mar. 31, 2011)).

under the Loan Documents, the Court denies Plaintiff's request to enter a separate judgment in its favor on its Second Cause of Action for diverted rents.[21]

Upon the foreclosure of the Property, Plaintiff may obtain a deficiency judgment against Guarantors for the outstanding balance on the Loan, if any. *See e.g.*, *Mattone*, 769 F. Supp. 3d at 319 (prohibiting plaintiff from bringing breach of guaranty action based on diverted rents because the rent "allegedly withheld from the Lender after the Borrower's default forms a part of the Mortgaged Property collateralizing the Debt, on which it seeks to foreclose" and noting that because the plaintiff chose to "pursue its equitable remedy in the Foreclosure Action – in which it may also seek a deficiency judgment – plaintiff cannot sue the [g]uarantors at law, in a separate action, to recover the same $17 million as damages").[22]

**D. Costs, expenses, and attorneys' fees**

Lastly, Plaintiff seeks to recover attorney's fees, expenses and costs incurred in connection with this action. *See* Plaintiff's Memorandum of Law at 23-24.

"Under the general rule, attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the

---

[21] Although the Court finds that Plaintiff is not entitled to a presently enforceable judgment against Guarantors for the diverted rents, the Court nevertheless holds that Guarantors breached the Guaranty by failing to satisfy their full recourse obligations to Plaintiff with respect to the payment of the Guaranteed Obligations.

[22] The Court acknowledges that, in this case, Plaintiff is not suing Guarantors in a *separate* action for the diverted rents. Nevertheless, the same principle applies: Plaintiff cannot seek double recovery. In other words, because Plaintiff does not allege damages separate from the funds it would have received from the diverted rents/revenues which would have then been applied to reduce the balance due under the Loan Documents, Plaintiff will be fully compensated for any loss resulting from the diverted rents/revenues upon the foreclosure and sale of the Property, and obtaining a deficiency judgment, if a deficiency exists.

parties, statute or court rule." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989) (citations and footnote omitted). "Since there is no statute in New York authorizing the recovery of an attorney's fee in a mortgage foreclosure action, such a fee may only be recovered if it is contractually authorized." *Levine v. Infidelity, Inc.*, 2 A.D.3d 691, 692 (2d Dep't 2003) "Thus, an attorney's fee may be recovered in the mortgage foreclosure action itself if the mortgage document obligates the mortgagor to pay such a fee for the expenses incurred in that action[.]" *Id.*

Here, the Loan Agreement provides that Borrower is responsible for the payment of all costs, fees, and expenses, including reasonable attorneys' fees, incurred by Plaintiff in connection with enforcing the Loan Documents. *See* Plaintiff's SMF at ¶ 31; *see also* Loan Agreement at §§ 3.1(i), 6.30; Mortgage at §§ 9, 29(c). Additionally, § 16(b) of the Guaranty provides that the Guarantors shall "pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, that may be incurred by [Plaintiff] in enforcing the covenants, agreements, obligations and liabilities of guarantor under the Guaranty." *See* Plaintiff's SMF at ¶ 63. Thus, the Loan Documents unequivocally require Defendants to pay Plaintiff's costs, fees, and expenses, including attorneys' fees, as a result of Plaintiff commencing this action and enforcing its rights under the Loan Documents.

Accordingly, the Court grants Plaintiff's request for attorneys' fees, expenses, and costs, which shall be calculated by the appointed referee.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for summary judgement, *see* Dkt. No. 52, on Plaintiff's First Cause of Action for foreclosure and sale of the Property, is **GRANTED;** and thus, the Court orders the foreclosure and sale of the subject property; and the Court further

**ORDERS** that Plaintiff's request for the appointment of a referee is **GRANTED,** and the parties shall, within 14 days of the date of entry of this Memorandum-Decision and Order, file a joint letter proposing three candidates to serve as referee, with a brief description of their qualifications and their hourly billing rates for serving as a referee in this matter and their agreement as to how the parties will split those costs so that the Court can select an individual to act as a referee; and the Court further

**ORDERS** that, together with their joint letter proposing three candidates to serve as referee, the parties shall also file an agreed-upon proposed appointment order, which shall include, at a minimum: (1) that the referee shall ascertain and compute the amount due to Plaintiff under the subject Loan Documents, including but not limited to, unpaid principal balance, interest, accumulated late charges, processing fees, service fees, and other fees due; (2) that the referee shall calculate the amount of attorneys' fees, costs, and expenses due to Plaintiff; (3) that the referee shall examine and report whether or not the mortgaged premises can be sold in one parcel; (4) that the referee shall make his/her report to the Court as soon as is practicable and with all convenient speed but, no later than ninety (90) days after the referee has been appointed and has subscribed the required oath; (5) that the referee shall submit to the Court a written status report every two weeks regarding the referee's progress in producing his/her report until the report's completion; (6) that the referee is appointed subject to the requirement of Rule 53 of the Federal Rules of Civil Procedure and will be disqualified from receiving an appointment pursuant to the provisions of that Rule; (7) that, in the event the referee is

disqualified from appointment under Rule 53, the referee shall notify the Court immediately, in writing; and (8) that the appointed referee is subject to the requirement of Rule 53.3 of the Local Rules of the Northern District of New York and shall take and subscribe an Oath to the effect that the referee will faithfully and impartially discharge his/her duties which shall be filed in accordance with the requirements of that Rule; and the Court further

**ORDERS** that, no later than 21 days after the referee files his/her report with the Court, the parties "may file objections to -- or a motion to adopt or modify -- the [referee's]" report pursuant to Rule 53(f)(2) of the Federal Rules of Civil Procedure; and the Court further

**ORDERS** that Plaintiff shall file a proposed Judgment of Foreclosure and Sale at the same time that it files its response to the referee's report; and the Court further

**ORDERS** that, upon resolution of objections, if any, to the referee's report, the referee shall sell the subject property and distribute proceeds in accordance with the Court's Judgment of Foreclosure and Sale; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment on its Third Cause of Action is **GRANTED,** and Guarantors, Mack A. Travis and A. Frost Travis, shall be jointly and severally liable with Borrower for the entire debt due under the Loan Documents; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment on its Second Cause of Action, is **DENIED** to the extent it requests a presently enforceable judgment against Guarantors for the diverted rents, and is **GRANTED** as to liability for breach of the Guaranty only; and the Court further

**ORDERS** that, should a deficiency exist after the sale of the subject property, Plaintiff may seek entry of a deficiency judgment, in accordance with New York Real Property Actions and Proceedings Law § 1371 against Guarantors; and the Court further

**ORDERS** that Plaintiff's request for attorneys' fees, costs and expenses which it has incurred in this action, the amount of which the appointed referee shall ascertain, is **GRANTED**.

**IT IS SO ORDERED.**

Dated: October 20, 2026
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge